**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

PROMOD CHANDHOK,
   Appellant,

  v.

DEPARTMENT OF
  TRANSPORTATION,
   Agency.

DOCKET NUMBERS
DC-0432-17-0812-I-9
DC-513D-17-0813-I-9

DATE: May 1, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Peter Broida</u>, Esquire, Arlington, Virginia, for the appellant.

<u>Paul Sanchez</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chair
Raymond A. Limon, Member

**REMAND ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the denial of the appellant's within-grade increase (WIGI) and his removal from service. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, DISMISS the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appellant's appeal of his denied WIGI for lack of jurisdiction, and REMAND the appellant's appeal of his removal to the regional office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2     In September 2017, the appellant filed a Board appeal challenging two distinct actions—the December 2015 denial of his WIGI and his November 2016 removal from service. The matters were docketed separately. *Chandhok v. Department of Transportation*, MSPB Docket No. DC-0432-17-0812-I-1, Initial Appeal File (0812 IAF), Tab 1 at 6-7; *Chandhok v. Department of Transportation*, MSPB Docket No. DC-531D-17-0813-I-1, Initial Appeal File (0813 IAF), Tab 1 at 6-7. However, they were joined for adjudication. 0812 IAF, Tab 6; 0813 IAF, Tab 6.

¶3     During the lengthy period that followed the appellant's initial filing, his appeals were repeatedly dismissed without prejudice to accommodate the parties' mediation efforts, settlement efforts, discovery, and other delays. *E.g.*, *Chandhok v. Department of Transportation*, MSPB Docket No. DC-0432-17-0812-I-5, Appeal File (0812 AF-5), Tab 104; *Chandhok v. Department of Transportation*, MSPB Docket No. DC-0432-17-0812-I-9, Appeal File (0812 AF-9), Tab 1. Then, in July 2020, the administrative judge held a 5-day hearing. *E.g.*, 0812 AF-9, Hearing Transcripts (HT1-HT5). Finally, the administrative judge issued a single initial decision that affirmed both of the agency's actions—the appellant's removal and the prior denial of his WIGI. 0812 AF-9, Tab 70, Initial Decision (ID).

¶4     The following facts, as further detailed in that initial decision, appear to be undisputed. The appellant most recently held a GS-14 Mathematical Statistician position within the agency's Bureau of Transportation Statistics (BTS). ID at 2. In July 2015, the agency determined that the appellant's performance was unacceptable in one critical element, "Business Results," causing his overall

performance rating to be unacceptable. *Id.*; 0812 AF-9, Tab 17 at 4-9. Therefore, the agency placed the appellant on a performance improvement plan (PIP) and later withheld his scheduled WIGI. ID at 2; 0812 AF-5, Tab 90 at 4-8, Tab 93 at 11-14.

¶5 At the conclusion of his PIP, which had been extended until February 3, 2016, the agency determined that the appellant's performance remained unacceptable in the critical element of "Business Results." ID at 3; 0812 AF-5, Tab 41 at 4-10. The agency proposed his performance-based removal for the same in June 2016. ID at 3; 0812 AF-5, Tab 40 at 4-11. After the appellant responded, the deciding official sustained the removal in November 2016. ID at 3; 0812 AF-5, Tab 12 at 4-9. The appellant then retired in lieu of his removal. 0812 AF-5, Tab 13 at 4.

¶6 The appellant first challenged his denied WIGI and removal through the equal employment opportunity (EEO) process. 0812 AF-5, Tabs 7-10. He then filed the instant appeals and raised claims of discrimination, EEO reprisal, and harmful procedural errors. ID at 3-4.

¶7 The administrative judge found that the agency met its burden regarding both the denied WIGI and the removal action. ID at 4-39. She further found that the appellant failed to meet his burden regarding any affirmative defense. ID at 39-48. Accordingly, the administrative judge sustained the agency's actions. ID at 48-49.

¶8 The appellant has filed a petition for review. *E.g.*, *Chandhok v. Department of Transportation*, MSPB Docket No. DC-0432-17-0812-I-9, Petition for Review (0812 PFR) File, Tab 3. The agency has filed a response, and the appellant has replied. 0812 PFR File, Tabs 5-6.

We must remand the appellant's removal claim for further adjudication in light of *Santos*.

¶9 At the time the initial decision was issued, the Board's case law stated that, to prevail in an appeal of a performance-based removal under chapter 43, the

agency must establish the following by substantial evidence: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance.[2] *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p). The administrative judge found that the agency met this burden and proved each of these elements. ID at 6-28, 30-39. As further detailed below, we find no basis for disturbing these findings, but we must remand for the parties to address one additional element, as described in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

> *OPM approved the agency's performance appraisal system and communicated to the appellant the performance standards and critical elements of his position.*

¶10    The agency submitted evidence regarding element 1—that OPM approved of its performance appraisal system. 0812 AF-5, Tab 100 at 21. Plus, the appellant indicated that he did not contest that element. 0812 AF-9, Tab 45 at 4.

---

[2] Although *Lee* provides that performance standards must be valid under 5 U.S.C. § 4302(b)(1), the National Defense Authorization Act of 2018 redesignated subsection 4302(b) as subsection 4302(c). Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017). Accordingly, 5 U.S.C. § 4302(c)(1) now sets forth the statutory requirements for a valid performance standard.

¶11    Regarding element 2—that the agency communicated to the appellant the performance standards and critical elements of his position—there also appears to be no dispute.  Among other things, the record includes the appellant's performance plan for the period between June 2014 and May 2015, signed by the appellant in December 2014 as part of his mid-year review and containing a notation that he had refused to sign the same at the start of the performance year.  *E.g.*, 0812 AF-9, Tab 17 at 4-9.  Although we found no explicit indication that the appellant was conceding this element, he did not present any substantive argument about the matter in his final brief below, 0812 AF-9, Tab 63, or in his petition for review, 0812 PFR File, Tab 3.

¶12    For these reasons, we agree with the administrative judge's conclusion that the agency met its burden regarding elements 1 and 2.  ID at 6-8, 16-17.

*The appellant's performance standards were valid.*

¶13    One of the appellant's primary arguments on review concerns element 3, the validity of the agency's performance standards.  0812 PFR File, Tab 3 at 6-13.  In summary, the appellant has alleged that the performance standards at issue in this appeal were impermissibly absolute and impermissibly subjective.  *Id.* at 8-13.

¶14    An absolute standard is one where a single incident of poor performance will result in an unsatisfactory rating on a critical element.  *Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶ 12 n.2 (2011).  The statutory scheme for performance-based actions does not preclude the use of absolute performance standards, so long as those standards are objective and tailored to the specific requirements of the position.  *Id.*; *Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, ¶¶ 13, 15 (2004).

¶15    The appellant argues that, although the statutory scheme for a performance-based removal does not prohibit absolute performance standards, the agency's policies did.  0812 PFR File, Tab 3 at 8-12.  In particular, agency policy about performance standards indicates that performance should be measured in

terms of timeliness, but the timeliness standard "must not be absolute," 0812 AF-9, Tab 12 at 70, while the agency's collective bargaining agreement provides that performance management systems "will not apply absolute performance standards except where they are crucial to the mission," 0812 AF-9, Tab 7 at 7-8.

¶16　　The appellant suggests that the performance standards from his performance plan and PIP violate those policies, the agency was not permitted to cure the alleged violations through subsequent communications, and we should not subject these alleged violations to a harmful error analysis. 0812 PFR File, Tab 3 at 6-12. In other words, the appellant argues that we should exclusively look to the performance plan and PIP to determine whether the agency violated internal policy and, if we find that it did, we should reverse his removal, regardless of whether he can prove that the violation was harmful.

¶17　　We disagree with the appellant's argument regarding what we should review while considering the validity of his performance standards. Although he suggests that we should not look past the four corners of his performance plan and PIP, the appellant has not directed us to anything requiring the same. Nor has he squared that argument with Board precedent to the contrary. The Board has routinely recognized that an agency may cure otherwise fatal defects in the development and communication of performance standards by communicating sufficient information about the performance requirements at the beginning of, and even during, the PIP. *Henderson*, 116 M.S.P.R. 96, ¶ 18; *see Town*, 120 M.S.P.R. 239, ¶ 23 (finding that an agency can and did cure any improper vagueness in its performance standards through additional oral or written communications); *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶¶ 18-19 (2001) (finding that even if an employee's unmodified performance standards were invalid, the agency cured them before the start of his PIP).

¶18　　We also disagree with the appellant's argument regarding the proper analytical framework for considering any violation of agency policy. The appellant directs us to *Cross v. Department of the Air Force*, 25 M.S.P.R. 353,

358-59 (1984), *aff'd*, [785 F.2d 320](#) (Fed. Cir. 1985), to assert that the harmful error test does not apply to the agency's alleged violation of its own policies regarding absolute standards. 0812 PFR File, Tab 3 at 8-11. But *Cross* merely recognized that certain statutory requirements described in chapter 43 are not subject to the harmful error test; it cannot be reasonably interpreted as reaching the same conclusion about an agency's internal policies regarding absolute performance standards. *Cross*, 25 M.S.P.R. at 356-59. Therefore, we find the harmful error test appropriate. *See Doe v. Department of Justice*, [123 M.S.P.R. 90](#), ¶ 7 (2015) (recognizing that the Board will not sustain an agency decision if the appellant proves a harmful error, i.e., a procedural error that was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error).

¶19 Regarding the performance standards at issue in this appeal, the appellant's performance plan describes the relevant critical element as follows: "Business Results . . . Under the direction of BTS project manager(s), successfully update key DOT documentation for statistical standards and guidelines and confidentiality procedures." 0812 AF-5, Tab 96 at 7. It then identifies the three documents to be updated—two agency manuals and one agency guide—while providing several dated milestones for doing so, such as an initial review for recommended updates, initial draft, second draft with edits incorporated, and completion of the documents, edited to omit errors and inconsistencies. *Id.* The performance plan acknowledged that the appellant's performance could be rated as unacceptable, achieved results, exceeded expectations, or outstanding. *Id.*

¶20 Subsequent communications and documentation provided additional context. For example, when the agency completed the appellant's performance appraisal for the period ending May 2015 and found his performance unacceptable in this critical element, it included a lengthy narrative statement devoted to the same. *Id.* at 12-17. Among other things, this narrative describes how the agency held periodic meetings with the appellant to provide "clear

expectations for each deliverable and due date," along with a senior statistician "to provide oversite and consultation" to the appellant. *Id.* at 12. It also describes how the agency reviewed "deadlines and deliverables" with the appellant and "reminded [him] that these defined the standard for an 'achieved results' rating." *Id.* Then, the agency provided specific instances of the appellant submitting work and other agency officials responding with explanations for why that work was deficient. *Id.* at 12-17.

¶21      The PIP, itself, is another example of the agency providing additional context to the relevant performance standards. 0812 AF-5, Tab 90 at 4-8. The PIP tasked the appellant with completing that which he failed to finish during the performance year—updates to the three documents listed for the Business Results critical element. *Id.* Among other things, the PIP included the following explanation of that which was required to attain the necessary "achieved results" rating:

> Successfully finalize the revisions of the 3 documents listed in [the critical element] within 111 days of the effective date of this PIP. The final versions must incorporate all comments received to date. These deliverables should also be generally free of grammatical errors and style inconsistencies. If comments are not addressed, a written, well-reasoned explanation must be timely provided and agreed to by your supervisor.

*Id.* at 5. The PIP then provided a roadmap with new, dated milestones to elaborate and explain the agency's expectations in terms of factors such as content, quality, and timeliness. *Id.* at 5-7. Plus, as detailed in the initial decision and throughout the record, the appellant's supervisor regularly met with the appellant to discuss her specific expectations and what more the appellant needed to do to meet them. *E.g.*, ID at 9-12; 0812 AF-9, Tab 15 at 34-36, 74-76.

¶22      Although the appellant argues that his performance standards were absolute and left no margin for error, we are not persuaded. None of the evidence described above explicitly or implicitly requires perfection to reach the necessary "achieved results" performance rating. The appellant's strained interpretation to

the contrary is not one we adopt. As further described in the initial decision, it is also not one shared by those measuring his performance. ID at 13-15; HT3 at 83-89 (testimony of the proposing official).

¶23 We further find that, even if the agency had a policy prohibiting absolute standards, and even if the agency violated that policy, the appellant failed to prove that the error was harmful. As detailed in the initial decision and discussed below, the agency did not find the appellant's performance unacceptable because of any single mistake or single instance of untimeliness. It found his performance unacceptable because of many mistakes and many missed deadlines. *E.g.*, 0812 AF-5, Tab 41 at 7-10.

¶24 Turning to the appellant's other set of arguments, that his performance standards were impermissibly subjective, we first note that an agency is not required to include in each performance standard specific indicators of quantity, quality, and timeliness that are used to evaluate work. *Henderson*, 116 M.S.P.R. 96, ¶ 23. Further, the fact that the performance standard may call for a certain amount of subjective judgment on the part of the employee's supervisor does not automatically invalidate the standard. *Id.* The Board has held that performance standards must be sufficiently precise and specific as to invoke a general consensus as to their meaning and content and provide firm benchmarks toward which the employee may aim his performance. *Id.* And again, as previously mentioned, the Board has also recognized that an agency may cure otherwise fatal defects in the development and communication of performance standards by communicating sufficient information regarding performance requirements at the beginning of, and even during, the PIP. *Id.*, ¶ 18.

¶25 The appellant's arguments on this point are also unavailing. It seems as if the appellant is suggesting that the agency's performance standards were impermissibly subjective because they did not adequately define the number or types of errors and delays that would be allowed under the "achieved results"

performance rating. 0812 PFR File, Tab 3 at 12-13. We disagree. The appellant's performance plan and the PIP that followed tasked the appellant with successfully updating three specific documents. *E.g*., 0812 AF-5, Tab 90 at 4-8. The agency repeatedly provided detailed descriptions of what was required to attain the necessary "achieved results" rating for doing so, along with dated milestones. *Id.* at 5-6; *supra* ¶¶ 20-22. The fact that these performance standards call for a certain amount of subjective judgement on the part of the appellant's supervisor, such as her judgement as to whether the documents were "generally free of grammatical errors," is acceptable under the circumstances. This is especially so because of the nature of the appellant's position and work, as well as the agency's extensive feedback throughout the performance year and PIP. *See Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶ 10 (2001) (recognizing that the degree of objectivity and specificity required in performance standards depends on the job involved and with greater discretion and independence on the part of an employee comes less objectivity and specificity in their performance standards); *see also Salmon v. Social Security Administration*, 663 F.3d 1378, 1381-82 (Fed. Cir. 2011) (finding performance standards were not impermissibly subjective because, inter alia, the employee's supervisor "gave direct, precise feedback on the deficiencies in [the employee's] work and clear instructions on how to remedy them").

¶26    For all these reasons, we agree with the administrative judge's conclusion that the agency proved element 3, the validity of its performance standards. The appellant's arguments to the contrary are not persuasive.

> *The agency warned the appellant of the inadequacies of his performance and gave him a reasonable opportunity to demonstrate acceptable performance.*

¶27    Regarding element 4—proof that the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance—the

administrative judge found that the agency met its burden. ID at 17-28. Among other things, she determined that the agency provided close supervision and extensive help to the appellant, throughout the relevant period, to no avail. *Id.* The administrative judge also considered but rejected the appellant's allegations that his assignments were improper and his training was inadequate. *Id.*

¶28 On review, the appellant presents arguments that implicate this element and associated claims of a harmful error. 0812 PFR File, Tab 3 at 13-25. First, he argues that the assignments underlying his unacceptable performance—to update three documents—violated the applicable union contract because they were not tied to his position. *Id.* at 13-14. The administrative judge found otherwise. ID at 20-25. Second, the appellant argues that the agency failed to provide training in project management and technical writing that was required by the union contract and performance management systems, 0812 PFR File, Tab 3 at 14-19, as well as assistance that was promised during the PIP, *id.* at 19-24. But again, the administrative judge found otherwise. ID at 25-26, 28.

¶29 Regarding the allegation that his assignments were not tied to his position, the appellant has failed to specifically identify any evidence in the voluminous record for support. *See* 5 C.F.R. § 1201.115(a)(2) (providing that a petitioner who alleges that the judge made erroneous findings of fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error). Instead, he merely reasserts that the assignments underlying his unacceptable performance—updating three documents—were atypical for him and better suited for someone with a different set of skills. 0812 PFR File, Tab 3 at 13-14. We are not persuaded by this argument, particularly in light of the administrative judge's extensive analysis of the same that included a discussion of the appellant's position description, his education, his prior authoring of a book, his experience within the agency, and his experience as an adjunct professor. ID at 20-25, 27.

¶30    Regarding the allegation that the agency failed to provide training that was either required by contract or otherwise promised, the appellant's arguments are similarly unavailing.  As to required training, the appellant has directed us to several resources, including statutes, regulations, Board precedent, Board reports, agency policies, and union contract provisions.  0812 PFR File, Tab 3 at 14-19. We have reviewed each but find that none required that the agency provide the appellant with formal training before acting on his unacceptable performance. For example, although the appellant has referenced 5 U.S.C. § 4302(a), that statute merely describes what performance appraisals should be used for, e.g., training but also decisions to remove an employee.  In another example, the appellant has recounted agency policies and union contract provisions regarding performance, but each provides that training "may" be provided.  0812 PFR File, Tab 3 at 15-17.  These and each of the other sources the appellant relies upon do discuss training, but none mandates it under the circumstances.  Plus, we note that the appellant has now, in retrospect, identified his need for certain formal training, but he has not identified any instance of him doing the same prior to his removal, when the agency repeatedly invited him to notify the agency if he believed any particular training would be beneficial as he worked to improve his performance.  *E.g.*, 0812 AF-5, Tab 90 at 4, 7, Tab 93 at 11, 13.

¶31    Turning to the appellant's allegation of promised training, it is true that an agency's promise of assistance during the PIP and then failure to provide the same may prevent the agency from meeting its burden in certain circumstances. *Corbett v. Department of the Air Force*, 59 M.S.P.R. 288, 290 (1993).  But again, the appellant's arguments on this point are not persuasive.  The administrative judge found that the agency provided the appellant with extensive assistance from his supervisor and others during the relevant period, *e.g.*, ID at 26, and the appellant does not appear to argue otherwise.  Instead, he seems to argue that because the projects underlying his unacceptable performance were originally planned to be group projects, he should have received assistance from the original

group members. 0812 PFR File, Tab 3 at 19-24. However, what may have originally been planned as a group project became the appellant's own project by late 2014, *id.* at 20-21, which was well before his 2015 rating of unacceptable, his subsequent PIP, and his 2016 removal. Therefore, even if he did not receive assistance from the individuals that may have been contemplated years earlier, that is of no apparent consequence to the period and performance at issue in this appeal.

*The appellant's performance remained unacceptable.*

¶32      Regarding element 5—proof that the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance—the administrative judge also found that the agency met its burden. ID at 30-39. In doing so, she discussed and relied on extensive testimony of multiple witnesses, as well as extensive documentary evidence, all reflecting how the appellant's work for each of the three documents the agency had tasked him with updating was deficient in terms of substance, consistency, and overall quality. *Id.*

¶33      On review, the appellant seems to implicate this element of the agency's burden by asserting that the agency misconstrued his drafts with final products. 0812 PFR File, Tab 3 at 24-25. But this is another instance of the appellant suggesting that the agency was holding him to an impossible and absolute standard, where he could not make even a single grammatical or stylistic error. *Id.* For the reasons previously discussed, we find the argument unavailing and unsupported by the evidence of record. *Supra* ¶ 23.

¶34      The appellant also argues that the administrative judge's factual analysis was materially incomplete. 0812 PFR File, Tab 3 at 26-27. He refers us to "many hours of testimony" about various pieces of documentary evidence, as well as his post-hearing brief, asserting that the administrative judge referred to neither in the initial decision. *Id.* However, an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in

reaching her decision. *E.g.*, *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Plus, despite the suggestion to the contrary, the administrative judge did cite to and discuss at least some of the appellant's testimony and closing brief for this element and others. *E.g.*, ID at 30, 31 n.8, 37 (referencing 0812 AF-9, Tab 63; HT5 at 35 (testimony of the appellant)). More broadly, the appellant has not shown that the administrative judge erred in finding the agency's evidence persuasive and sufficient for purposes of its evidentiary burden in this appeal.

>    *On remand, the agency must prove one additional element regarding the appellant's removal.*

¶35        Although the appellant has identified no basis for us to disturb the administrative judge's findings regarding the agency proving the elements described above, we must remand this appeal for the agency to prove an additional element of its charge for its removal action. During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, 1363, that in addition to the five elements of the agency's case set forth above, the agency must also "justify the institution of a PIP" by proving by "substantial evidence that the employee's performance was unacceptable . . . before the PIP."

¶36        The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Accordingly, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

**On remand, the administrative judge must also make new findings about the appellant's EEO reprisal claim and one additional harmful error claim, as appropriate.**

¶37     The administrative judge rejected the appellant's numerous affirmative defenses, which included claims of discrimination based on national origin, sex, and age, reprisal for engaging in protected EEO activity, and harmful error. ID at 39-48.   Except for the harmful error claims we discussed above, in connection with the elements required for a performance-based action such as this, the appellant has not reasserted his affirmative defenses on review. His petition makes no substantive argument of discrimination or reprisal. Nevertheless, for the reasons that follow, we find that the administrative judge must reconsider the appellant's EEO reprisal claim, using the proper legal standards.   We also find that the administrative judge should consider one new harmful error claim, if the appellant pursues it during the remand proceedings.

*EEO Reprisal*

¶38     The administrative judge found that the appellant's claims of discrimination based on national origin, sex, or age failed because the appellant did not prove that his national origin, sex, or age were a motivating factor in the denied WIGI or removal.    ID at 39-45 (citing *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 42 (2015)).[3]   We find no basis for reaching a different conclusion.

¶39     For his EEO reprisal claim, the administrative judge referenced the same motivating factor standard in both an affirmative defense order and a portion of the initial decision.  ID at 40; *Chandhok v. Department of Transportation*, MSPB Docket No. DC-0432-17-0812-I-4, Appeal File, Tab 5 at 2.   However, as she discussed the underlying allegations and facts, the initial decision cites a

---

[3] Because the appellant here failed to prove his initial burden that national origin, sex, or age played any part in the agency's decision, we do not reach the question of "but-for" causation.  *Pridgen v. Office of Management and Budget*, 2022 MSPB 31.

"genuine nexus" requirement. ID at 45-48. That was not the correct standard to apply. *See, e.g.*, *Mattison v. Department of Veterans Affairs*, [123 M.S.P.R. 492](#), ¶ 8 (2016) (describing one of the limited circumstances in which the genuine nexus standard still applies). The correct standard for the appellant's EEO reprisal claim depends on the nature of the appellant's EEO activity, which is not explicitly discussed in the initial decision. *See, e.g.*, *Haas v. Department of Homeland Security*, [2022 MSPB 36](#), ¶ 31(recognizing the differing standards for Title VII-based reprisal claims and disability-based reprisal claims).

¶40    Although the appellant has not reasserted his EEO reprisal claim on review, the administrative judge on remand should determine the nature of the activity underlying the appellant's EEO reprisal claim to decide the appropriate burden of proof. She should then apprise the parties of the same and issue new findings under the appropriate standards.

### *Harmful Error*

¶41    Though not raised by either party, we recognize that when the deciding official sustained the appellant's proposed removal, he indicated that the allegations described in the proposal were "supported by substantial evidence." 0812 AF-5, Tab 12 at 7. It is not apparent, however, whether this was a purposeful reference to the legal standard the Board applies when reviewing a performance-based action under chapter 43. *See* [5 U.S.C. § 7701](#)(c)(1) (providing that appeals of a chapter 43 performance-based action are subject to the "substantial evidence" standard, while all other cases must be supported by preponderant evidence). We have not come across anything in the record to suggest, for example, that the deciding official was instructed by agency policy to apply the "substantial evidence" legal standard while considering the appellant's proposed removal.

¶42    During the period since the administrative judge issued the initial decision, the Federal Circuit considered a somewhat comparable situation in an appeal governed by [38 U.S.C. § 714](#). *Rodriguez v. Department of Veterans Affairs*,

8 F.4th 1290 (Fed. Cir. 2021). In that case, the deciding official seemed to apply the "substantial evidence" to an employee's proposed removal, and agency policy seemed to dictate the same. *Id*. at 1297 n.3. The court, however, found that preponderant evidence was the proper standard for the agency as it made its determination on a proposed removal, and the underlying statutory scheme's reference to "substantial evidence" merely dictated the standard of review that the Board would apply when reviewing the matter on appeal. *Id*. at 1296-1301. In a subsequent but similar case that was also governed by 38 U.S.C. § 714, the Board determined that such an error should be analyzed as a harmful error affirmative defense. *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶¶ 22-25.

¶43 Because *Rodriquez* and *Semenov* were issued after the initial decision and petition for review in the instant appeal, the administrative judge should entertain new arguments the appellant presents about the same during the remand proceedings, if the appellant chooses to present any.

The administrative judge did not abuse her discretion in excluding a witness.

¶44 Below, the appellant requested several witnesses to testify. 0812 AF-9, Tab 37 at 14-15. The appellant described one as being able to testify about how he used to supervise both the appellant and the appellant's immediate supervisor. *Id*. at 15. According to the appellant, this individual would further testify about how the appellant's immediate supervisor was disinclined to work with the appellant back then, when she was not his supervisor but was a colleague. *Id*.

¶45 Although the administrative judge approved the others, she denied the appellant's request to call this witness. 0812 AF-9, Tab 45 at 4-6. The appellant objected and asked that the administrative judge reconsider, 0812 AF-9, Tab 47 at 4-5, but she denied that request as well, 0812 AF-9, Tab 53 at 1-2. The administrative judge reasoned that this proposed witness retired from the agency approximately 14 years prior to the hearing and the information the appellant wished to elicit from him was not relevant or material. *Id*.

¶46     An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8) and (10) to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985). On review, the appellant challenges the exclusion of this proposed witness, reiterating arguments he made below. 0812 PFR File, Tab 3 at 27-29. He once again suggests that this proposed witness could have provided testimony about the appellant's performance and about possible animus from the appellant's supervisor. *Id*. But we remain unpersuaded that the administrative judge abused her wide discretion. As the administrative judge recognized, this individual's testimony about the appellant's performance or the parties' working relationships 14 years earlier does not seem particularly relevant to the issues at hand.

The Board lacks jurisdiction over the appellant's denied WIGI.

¶47     All of the above analysis has concerned the appellant's removal action, which is within the Board's jurisdiction. However, the administrative judge also adjudicated a denied WIGI. For the reasons that follow, we vacate the administrative judge's findings on that claim and instead find that the appellant failed to prove that the Board has jurisdiction over the matter.

¶48     An employee earns a WIGI upon completion of the applicable waiting period so long as, inter alia, he or she is performing at an acceptable level of competence. 5 U.S.C. § 5335(a). If an agency determines that an employee is not performing at an acceptable level of competence and withholds a WIGI, the employee is entitled to "an opportunity for reconsideration . . . within his [or her] agency under uniform procedures prescribed by the Office of Personnel Management." 5 U.S.C. § 5335(c). "If the determination [to withhold the WIGI] is affirmed on reconsideration, the employee is entitled to appeal to the Merit Systems Protection Board." *Id*. Thus, the Board can exercise jurisdiction over an appeal from the withholding of a WIGI only if the agency has affirmed its initial determination upon reconsideration or has unreasonably refused to act on a

request for reconsideration. *Priselac v. Department of the Navy*, [77 M.S.P.R. 332](#), 335 (1998).

¶49     In this case, the agency denied the appellant's WIGI in December 2015. 0812 AF-5, Tab 93 at 11-14. The letter advising of the same notified the appellant of his rights and procedures. It explained that the appellant had 15 days to request reconsideration. *Id*. at 13.

¶50     At the time of his denied WIGI, the appellant already had a pending EEO complaint regarding other matters. 0812 AF-5, Tab 8 at 6-7. The record shows that he added the denied WIGI to this EEO complaint by late February 2016. *Id*. at 11-12. In August 2017, the agency issued a Final Agency Decision (FAD) about the denied WIGI. 0812 AF-5, Tab 10. Among other things, the FAD called into question whether the appellant had requested reconsideration of the denied WIGI and whether, as a result, the matter would be within the Board's jurisdiction. *Id*. at 6.

¶51     Within 30 days of that FAD, the appellant filed his Board appeals, challenging his removal and the denied WIGI. 0812 IAF, Tab 1; 0813 IAF, Tab 1. The administrative judge adjudicated both, and the initial decision indicated that both were within the Board's jurisdiction. ID at 1. However, the initial decision contains no substantive discussion of the Board's jurisdictional limitations, including the requirement that the appellant first requested reconsideration of his denied WIGI with the agency.

¶52     Given these facts, the Office of the Clerk of the Board sent the parties an order, requesting arguments and evidence about the matter. 0812 PFR File, Tab 7. Both parties responded. The agency presented argument and evidence that it searched but found no indication that the appellant requested reconsideration of the agency's decision to deny his WIGI. 0812 PFR File, Tab 9. The appellant presented no argument or evidence to the contrary. 0812 PFR File, Tab 8. Instead, the appellant has essentially argued that the Board should waive its

jurisdictional limitations due to the time, energy, and costs associated with pursuing the matter up to this point. *Id*. at 4-6. That argument is unavailing.

¶53 Under these circumstances, we must vacate the administrative judge's analysis of the appellant's denied WIGI. The appellant failed to meet his jurisdictional burden for that claim. *See Winns v. U.S. Postal Service*, 124 M.S.P.R. 113, ¶ 7 (2017) (recognizing that the Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation, and that an appellant bears the burden of proving jurisdiction by preponderant evidence), *aff'd sub nom. Williams v. Merit Systems Protection Board*, 892 F.3d 1156 (Fed. Cir. 2018).

Conclusion

¶54 In conclusion, the appellant failed to meet his burden of proving that the Board has jurisdiction over the agency's decision to deny him a WIGI. The appellant also failed to present any persuasive arguments on review regarding his removal. Nevertheless, we must remand for further adjudication of certain matters associated with his removal appeal.

¶55 On remand, the administrative judge shall accept argument and evidence on the additional element described in *Santos*, and she shall hold a supplemental hearing if appropriate. *Lee*, 2022 MSPB 11, ¶ 17. The administrative judge shall then issue a new initial decision. *See id*. If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate her prior findings on the other elements of the agency's case. *See id*.; *supra* ¶¶ 10-34.

¶56 In her remand initial decision, the administrative judge may also incorporate her prior findings as to the appellant's affirmative defenses, except those about the appellant's EEO reprisal claim, which must be revisited to apply the appropriate standard. *Supra* ¶¶ 39-40. The administrative judge must also address any new arguments the appellant may present about *Rodriquez*, *Semenov*, and the deciding official's reference to "substantial evidence." *Supra* ¶¶ 41-43.

¶57    Regardless of whether the agency meets its burden for the additional element required under *Santos*, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, she should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

¶58    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.[4]

FOR THE BOARD:                    /s/ for _____

                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.

---

[4] As explained above, we find that the Board lacks jurisdiction over the appeal of the WIGI denial at issue in MSPB Docket No. DC-531D-17-0813-I-9. However, in order to efficiently process these appeals, we remand both. *See* 5 C.F.R. § 1201.117(a)(5). The administrative judge should incorporate our jurisdictional findings concerning the WIGI denial into the remand initial decision and provide review rights for both appeals.