NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID W. MOLTZEN,**
*Petitioner,*

**v.**

**DEPARTMENT OF LABOR,**
*Respondent.*

---

2012-3145

---

Petition for review of the Merit Systems Protection Board in no. SF0432100994-I-1.

---

Decided: February 6, 2013

---

DAVID W. MOLTZEN, of Vallejo, California, pro se.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director. Of counsel was LAURA BREMER, Trial Attorney, United States Department of Labor, of San Francisco, California.

---

Before MOORE, CLEVENGER, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

David Moltzen seeks review of the final decision of the Merit Systems Protection Board (Board) sustaining his removal from the position of Employee Benefit Security Administration (EBSA) Senior Investigator for unacceptable performance. *Moltzen v. Dep't of Labor*, Docket No. SF0432100994-I-1 (M.S.P.B. April 6, 2012) ("Final Decision"). We *affirm*.

I

Mr. Moltzen served as a GS-13 Senior Investigator from October 2004 until August 2010, when he was removed for poor performance. As a Senior Investigator, Mr. Moltzen was responsible for initiating, planning, coordinating, and managing "extremely broad, difficult civil and criminal investigations" related to the business, financial, and accounting practices of employee pension and welfare benefit plans. Mr. Moltzen's position required "in-depth knowledge" of the Employee Retirement Income Security Act (ERISA). GS-13 Investigators are expected to perform their work independently.

Mr. Moltzen was required to perform at an "acceptable" level in each of four elements critical to his position. As relevant to this appeal, performance is acceptable in critical element 2, Quality of Investigations, when with *"few* exceptions:"

A. Potential violations are identified and researched.

B. Leads are explored, sufficient interviews are conducted, relevant records are obtained, and the evidence gathered is sufficient to support the investigative findings.

C. Work products, such as ROIs [Reports of Investigation], and VC [Voluntary Compliance] letters,

include clear and concise presentation of the facts and a technically well-founded application of the relevant statutes to the facts.

D. Oral representations made at meetings (VC, Settlement, and Supervisory) involving the application of relevant civil statutes are technically correct.

E. Answers to inquiries are comprehensive and technically accurate.

F. Confidential information and case file materials are maintained in accordance with EBSA and Regional Office Procedures.

G. Contacts with governmental agencies and other organizations are in accordance with EBSA guidelines, applicable laws, regulations, and interagency agreements and are handled in a professional manner.

*Moltzen v. Dep't of Labor*, No. SF-0432-10-0994-I-1 at 9-10 (M.S.P.B. Aug. 12, 2011) ("Initial Decision") (emphasis added). By contrast, performance "needs-to-improve" and is "minimally acceptable" when the employee meets the above criteria with "*some*"—as opposed to only a "*few*"—exceptions. *Id.* (emphasis added).

Mr. Moltzen's review process began in April 2009, when he was told in a mid-year review that his work may not meet the performance standards in three of the four critical areas. Suzanne Fischer, Mr. Moltzen's direct supervisor, gave Mr. Moltzen a 60-day informal improvement period, and provided Mr. Moltzen with specific feedback and steps to improve his performance.

When Mr. Moltzen's performance failed to improve, Ms. Fischer placed him on a Performance Improvement Plan (PIP). *See* 5 U.S.C. § 4302 (a PIP provides an em-

ployee with notice of performance failings and identifies specific goals to meet to retain employment).

Mr. Moltzen and Ms. Fischer reviewed the PIP together, and a few days later Ms. Fischer issued a lengthy memorandum discussing Mr. Moltzen's deficient performance and giving him 90 days to improve. During the 90-day PIP period, Ms. Fischer or another supervisor met with Mr. Moltzen weekly to discuss his progress and provide guidance on improving his work.

During the PIP, Mr. Moltzen worked primarily on two cases, which are referred to in the Board decision as the "Union" case and the "A" case. Ms. Fischer found that Mr. Moltzen's work on both of these cases was deficient. For example, Mr. Moltzen's work product on the "Union" case required multiple revisions, and still failed to include legal analysis, omitted several key issues, and included one issue that EBSA lacks jurisdiction over. On the "A" case, Ms. Fischer had to return Mr. Moltzen's work product three times for "substantive omissions."

Based on this performance and failure to improve, after an extended 132-day PIP period, Mr. Moltzen was removed from his position.

On review, an administrative judge (AJ) upheld Mr. Moltzen's removal. Although the AJ found that EBSA's "definition of performance would be impermissibly vague if no further clarification was provided," he concluded that communications from Ms. Fischer cured any vagueness in the standards. The AJ discussed in detail Mr. Moltzen's performance on the Union case and the A case, and found that Mr. Moltzen indeed failed to bring his performance in critical element 2, Quality of Investigations, up to a minimally acceptable level.

Mr. Moltzen appealed the AJ's decision to the Board. The Board denied Mr. Moltzen's petition for review and affirmed the AJ's decision. This appeal followed.

## II

We have jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9). We must affirm the Board's final decision unless we determine that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Sandel v. Office of Pers. Mgmt.*, 28 F.3d 1185, 1186 (Fed. Cir. 1994).

## III

### A

Mr. Moltzen's primary complaint is that the EBSA used unlawfully-subjective criteria to evaluate his performance. Under 5 U.S.C. § 4302(b)(1), a performance evaluation system must establish "performance standards which will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria."

Mr. Moltzen emphasizes the AJ's finding that the "some" versus "few" difference in performance standards was impermissibly subjective. Mr. Moltzen contends that the vague written standards cannot be "cured" and therefore cannot be the basis for his removal.

This court addressed the requirements of § 4302(b) and the possibility of explicating written performance standards in *Salmon v. Social Security Administration*, 663 F.3d 1378 (Fed. Cir. 2011) and in *Wilson v. Department of Health & Human Services*, 770 F.2d 1048 (Fed. Cir. 1985).

An adequate performance standard must be "sufficiently precise and specific as to invoke a general consensus as to its meaning and content." *Wilson*, 770 F.2d at 1052. However, the "performance standard" is not the

written standard read in isolation. Instead, "[t]he efforts of a supervisor to instruct the employee on how best to satisfy the standard also matter[]." *Salmon*, 663 F.3d 1382.

As we explained in *Salmon*, the question to be evaluated is whether the performance plan, "in light of the supervisor's efforts at instruction, [was] clear, precise, and specific enough to be 'objective.'" *Id*.

Mr. Moltzen argues that his case is unlike *Salmon* and *Wilson* because the rating standards applied to him were impermissibly vague as written. The prior cases, Mr. Moltzen argues, involved valid performance standards that were then further explained and applied to the employee. Thus, Mr. Moltzen contends that there is no precedent for "curing" an invalid performance standard with further clarification from a supervisor.

The government makes two responses. First, the government asks us to find that the performance standards were not, in fact, impermissibly vague. Second, if we decline, the government asks us to find that the performance standards were adequately clarified and elaborated on in this case.

First, we agree with the AJ that the performance standards were inadequate as written. While it is clear that "some" errors is more than a "few" errors, it is unclear by how much. How can a reasonable employee know when they have passed from a "few" errors into "some" error territory? That is not to say that performance standard must specify a certain numbers of errors allowed per rating. *Wilson*, 770 F.2d at 1052; *Salmon*, 663 F.3d at 1381-82. However, the difference between "some" and "few" is not "sufficiently precise and specific as to invoke a general consensus as to its meaning and content," *Wilson*, 770 F.2d at 1052, and without further elaboration or guidance cannot be the basis for removing an employee.

Turning now to the question of whether the performance standards, as applied to Mr. Moltzen, were adequate, we must answer yes. Mr. Moltzen's basis for distinguishing cases like *Salmon* results from a misunderstanding over what is accurately considered a "performance standard." As we held in *Salmon*, the performance standard must be evaluated "in light of the supervisor's efforts at instruction." 663 F.3d at 1382. Evaluating Mr. Moltzen's review and removal process from that perspective, it is clear that Mr. Moltzen was given adequate guidance as to what work fell below minimally acceptable performance.

As described in detail in the AJ's decision, Ms. Fischer discussed the relevant performance standards with Mr. Moltzen throughout the PIP period. Ms. Fischer explained the difference between "some" and "few" errors and specifically told Mr. Moltzen that "he needed to avoid making repetitive errors, submitting work requiring excessive revisions, needing excessive guidance, failing to work independently, and failing to identify violations or fiduciaries." Initial Decision at 11. Furthermore, Ms. Fischer's PIP memorandum detailed Mr. Moltzen's failings with regard to the Union case and the A case and provided him with specific steps to bring his performance up to the minimally acceptable level.

Based on the AJ's findings, as sustained by the Board, we agree that Mr. Moltzen's performance plan, "in light of the supervisor's efforts at instruction, [was] clear, precise, and specific enough to be 'objective.'" *Salmon*, 663 F.3d at 1382.

B

Mr. Moltzen goes on to argue that his performance did not fall below the minimally acceptable level. The AJ and the Board carefully reviewed Mr. Moltzen's performance during the PIP and agreed that it did not meet the level for retention as a GS-13 Senior Investigator. Because the Board's findings are supported by substantial evidence and it did not err as a matter of law, we affirm its ruling that the Agency properly removed Mr. Moltzen for failing to comply with the PIP.

The Board analyzed all of the record evidence, concluded that Mr. Moltzen's removal was appropriate, and it is not for this Court to reweigh the evidence on appeal. *See, e.g.*, *Henry v. Dep't of Navy*, 902 F.2d 949, 951 (Fed. Cir. 1990). The Board also found the evidence and testimony supporting removal more credible than evidence proffered by Mr. Moltzen. To the extent that Mr. Moltzen challenges the weight afforded this evidence, we note that the determination of witness credibility is within the Board's discretion and, in general, is largely unreviewable on appeal. *See, e.g.*, *King v. Dep't of Health and Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998).

C

Mr. Moltzen's final argument is that he was not given an adequate opportunity to improve. The AJ's finding that Ms. Fischer gave Mr. Moltzen a reasonable opportunity to improve as required by 5 U.S.C. § 4304 is supported by substantial evidence. Mr. Moltzen was given a 90-day informal improvement period and then an extended 132-day PIP, during which Ms. Fischer met with him nearly weekly to discuss his performance and offer feedback on how to improve.

IV

Upon careful review of the record, and all of Mr. Moltzen's assertions and arguments, we conclude that the

Board committed no reversible error in affirming Mr. Moltzen's removal.  The final decision of the Board is therefore *affirmed*.

## AFFIRMED

### Costs

No costs.