# United States Court of Appeals for the Federal Circuit

---

**CRISPIN TORRES,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2022-2003

---

Petition for review of an arbitrator's decision in No. AR-20-17 by Samuel Vitaro.

---

Decided:  December 20, 2023

---

HOWARD BRANDON ZAKAI, Granger & Associates LLC, New York, NY, argued for petitioner.  Also represented by RAYMOND R. GRANGER.

ELINOR JOUNG KIM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, REYNA and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge.*

Crispin Torres appeals an arbitration decision sustaining his removal from the Department of Homeland Security. Because the arbitrator did not provide substantial evidence for why *Douglas* factors 6 and 10 weighed in favor of removing Mr. Torres from the agency, we vacate the decision and remand to the arbitrator for proceedings consistent with this opinion.

I

A

In February 2009, Mr. Torres began working for the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations. He was originally employed as an Immigration Enforcement Agent, which was later converted into a Deportation Officer position. As a Deportation Officer, Mr. Torres was responsible for the detention and removal of non-citizens who were determined to be in the United States without authorization. As part of his duties, Mr. Torres escorted non-citizens to their home countries pursuant to orders of removal from the United States.

In April 2019, Mr. Torres was directed to escort a noncitizen from Las Vegas, Nevada, to Santiago, Chile. Per his supervisor-approved travel authorization, Mr. Torres was scheduled to travel from Las Vegas to Santiago on April 16, 2019, return from Santiago to Las Vegas on April 18, 2019, and report to work on April 19, 2019. However, without authorization, Mr. Torres changed his flight and flew back to Las Vegas approximately 24 hours earlier on April 17, 2019, to spend time with his family on April 18, 2019. To conceal his unauthorized travel and leave of absence, Mr. Torres reported to work on April 19, 2019, to make it appear as if he had just returned from Santiago as originally scheduled. Despite knowingly disobeying his travel orders, Mr. Torres also submitted three false certified records in

connection with his travel authorization. Mr. Torres falsi-
fied and submitted for pay a G-391 form that listed his au-
thorized overtime, a travel voucher that included receipts
for expenses (per diem), and a certification of the number
of hours of work performed on WebTA, a web-based time-
keeping and attendance system. Following the incident,
Mr. Torres acknowledged that he committed the charged
misconduct involving falsification of certified records and
absence without leave. He accepted responsibility and ex-
pressed remorse. Mr. Torres had no prior disciplinary rec-
ord and his job evaluations had been "[e]xcellent" or "[f]ully
[s]uccessful."

B

On April 24, 2020, Acting Deputy Field Office Director,
Tracey L. Cammorto, proposed Mr. Torres's removal based
on three specifications of Falsification of Certified Records
(Reason 1) and two specifications of Absence without Leave
(Reason 2). Mr. Torres replied to the proposed removal by
letter dated May 21, 2020, and orally with his attorney on
June 3, 2020, before the deciding official, Sylvester M. Or-
tega, Acting Field Office Director, Field Operations, En-
forcement and Removal Operations.

On August 10, 2020, after reviewing the case file and
considering Mr. Torres's written and oral statements, the
deciding official sustained Reasons 1 and 2 and all the spec-
ifications, finding removal reasonable. In determining the
appropriate penalty, the deciding official reviewed the
*Douglas* factors, emphasizing the nature and seriousness
of Mr. Torres's misconduct, especially due to the higher
standard of conduct expected of a law enforcement officer.
*Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–06
(1981). The official found Mr. Torres's misconduct to be
particularly serious because he knowingly submitted three
different false certified records over a ten-day period be-
tween April 19, 2019, and April 29, 2019. J.A. 1073–78. The
deciding official found it especially aggravating that Mr.

Torres's offenses were part of a ruse to make it appear he had completed his foreign escort detail according to schedule and concealed his unauthorized early return. The deciding official ultimately found that due to the seriousness of his misconduct, Mr. Torres was not a good candidate for rehabilitation. The deciding official emphasized that Mr. Torres's misconduct was "deliberate, intentional and exhibited a lack of truthfulness toward the Agency." J.A. 1077. He further stated, "I have no confidence in his ability to perform his duties given the lack of truthfulness in his dealings with the Agency upon the return from his international travel." *Id.* The deciding official notified Mr. Torres of his decision by letter on August 10, 2020, which Mr. Torres refused to sign. On August 11, 2020, Mr. Torres was removed from his position.

Mr. Torres's union then invoked arbitration. On April 23, 2021, a hearing was held online. Three witnesses testified at the hearing: (1) Mr. Torres; (2) the deciding official, Mr. Ortega; and (3) Mr. Torres's supervisor, Matthew Cantrell. J.A. 7, 1081. On May 30, 2022, the arbitrator, Samuel A. Vitaro, issued his opinion and award, determining there was a preponderance of the evidence for the charged misconduct and that Mr. Torres's removal was reasonable.

This appeal followed. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A).

## II

This court applies the same standard of review to an arbitrator's decision as it does to appeals from decisions of the Merit Systems Protection Board (MSPB). *See* 5 U.S.C. § 7121(f); *Dunn v. Dep't of Veterans Affs.,* 98 F.3d 1308, 1311 (Fed. Cir. 1996). Pursuant to 5 U.S.C. § 7703(c), we may reverse an arbitrator's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020) (quoting § 7703(c)). We review legal decisions de novo and findings of fact for substantial evidence. *Salmon v. Soc. Sec. Admin.*, 663 F.3d 1378, 1381 (Fed. Cir. 2011); *Bolton v. MSPB*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simpson v. Off. of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### III

Although Mr. Torres argues that the arbitrator's decision was an abuse of discretion, we review the arbitrator's findings of facts for substantial evidence. *See Sistek*, 955 F.3d at 953. The MSPB has articulated twelve factors—the *Douglas* factors—to be considered when determining the reasonableness of a penalty imposed against a federal employee. *See Douglas*, 5 M.S.P.R. at 305–06. Mr. Torres contends that the arbitrator incorrectly assessed those factors in determining whether the penalty DHS imposed upon Mr. Torres was appropriate. We agree.

Specifically, Mr. Torres argues that there was not substantial evidence to support the arbitrator's decision that *Douglas* factors 6 and 10 weighed against him. Under *Douglas* factor 6, the arbitrator examined the "consistency of the penalty with those imposed upon other employees for the same or similar offenses." *Id.* at 305. Before providing his analysis, the arbitrator found the deciding official's review of this factor to be too limited. Thus, the arbitrator broadened his examination by considering the four comparator discipline cases presented by Mr. Torres. *See* J.A. 77; J.A 111–33. The arbitrator concluded Mr. Torres failed to meet his burden to first show sufficient similarity between the nature of the misconduct and other factors to establish disparate treatment. J.A. 17. But, each of the four

comparator discipline cases involved a law enforcement officer's misrepresentations to ICE and are relevant to Mr. Torres' discipline. *See* J.A 111–33.

One comparator discipline case, which the arbitrator stated was the "most similar" to Mr. Torres's misconduct, involved a GS-13 Criminal Investigator and Special Agent who was given a 14-day suspension for three specifications of "making misstatements or misrepresentation" and two specifications of "absence without leave." J.A. 112. In that case, the investigator was absent from work on May 15, 2017, and the morning of May 16, 2017. J.A. 116. When questioned, the employee stated he was working surveillance on May 15, 2017, despite being at home. *Id.* He also indicated he had driven a government-owned vehicle through an E-Z pass toll that same day, but later admitted he did not. *Id.*

Mr. Torres argues that the arbitrator unreasonably rejected this comparator case, since it involved misrepresentations and absence without leave "under circumstances objectively far more serious" than Mr. Torres's case. Appellant's Br. at 28–33. Yet, the arbitrator attempted to distinguish the case by stating that that there was "no evidence that the agency in that case relied on *Giglio*-impairment, a critical aggravating factor in [Torres's] case." J.A. 17. *Giglio v. United States* requires a law enforcement officer testifying against a defendant to disclose their own prior misconduct to allow the jury to determine the credibility of the law enforcement officer's testimony. *See* 405 U.S. 150, 154–55 (1972). A *Giglio*-impaired officer is a law enforcement officer who would be required to make such a disclosure to a jury when testifying in a trial. *Id.*

While Mr. Torres may now be considered *Giglio*-impaired, the arbitrator did not discuss any evidence as to why Mr. Torres's potential *Giglio* impairment warranted a different disciplinary finding from other ICE law enforcement officers under *Douglas* factor 6, especially when other

*Giglio*-impaired officers in similar circumstances have only been suspended. *See* J.A. 112–19. *Giglio* impairment can be a basis for removal of law enforcement officers, particularly ones who routinely testify as part of their official duties, but the government has not suggested that *Giglio* impairment must aways result in removal. Nor could it, since there is evidence on the record here of other similarly impaired agents that were not removed.

In particular, the arbitrator never explained why an ICE special agent with law enforcement duties would not be *Giglio*-impaired while Mr. Torres, another ICE law enforcement agent, would be. And the agency's apparent decision not to rely on *Giglio* impairment in the comparator discipline case is insufficient alone to render it non-similar. The agency is not entitled to selectively choose when to rely on *Giglio* impairment without further explanation.

Here, the arbitrator failed to consider whether Mr. Torres is even routinely required to testify in court. Although his position description includes testifying in court, it does not appear that the actual duties performed by Mr. Torres as a Deportation Officer involve regularly testifying. Thus, the arbitrator should have provided a more fulsome review, including a presentation of substantial evidence, to justify his determination that *Douglas* factor 6 weighed against Mr. Torres. J.A. 83, 91.

Moving to *Douglas* factor 10, the arbitrator examined the "potential for the employee's rehabilitation." 5 M.S.P.R. at 305. In a single paragraph, the arbitrator concluded that Mr. Torres "had no potential for rehabilitation, in light of the seriousness of the falsification misconduct." J.A. 18. But as Mr. Torres noted, on at least one separate occasion, DHS imposed only a 14-day suspension on a DHS law enforcement officer who had committed the same category of offenses as Mr. Torres: making misstatements or misrepresentations and being absent without official leave. *See* J.A. 112–19. While the arbitrator cursorily discussed the

issue of Mr. Torres's potential *Giglio* impairment when considering *Douglas* factor 6, he did not explain why Mr. Torres, under *Douglas* factor 10, is beyond rehabilitation when Mr. Torres presented cases where potentially *Giglio*-impaired law enforcement officers with similar offenses remained in federal service. Accordingly, the arbitrator did not provide substantial evidence to support why Mr. Torres had no potential for rehabilitation and, therefore, whether the penalty should be mitigated.

While no *Douglas* factor is necessarily dispositive in considering the penalty applied to a federal employee, our court requires that *Douglas* factors significant to the case be reviewed thoroughly. *See Malloy v. U.S. Postal Serv.*, 578 F.3d 1351 (Fed. Cir. 2009) (vacating and remanding an MSPB decision because mental health impairments were not discussed when analyzing *Douglas* factor 11). Here, *Douglas* factors 6 and 10 are significant because they highlight similar comparator discipline cases and examine whether Mr. Torres could be rehabilitated to return to his duties despite possibly being *Giglio*-impaired. Accordingly, we vacate the decision of the arbitrator and remand for the arbitrator to consider Mr. Torres's evidence that his imposed discipline is inconsistent with similarly situated federal employees and that his rehabilitation is possible by reapplying the *Douglas* factors

### IV

We have considered the rest of the parties' arguments and find them unpersuasive. We therefore vacate the arbitrator's decision and remand for proceedings consistent with this opinion.

### VACATED AND REMANDED

#### COSTS

Costs to petitioner.