NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TYLER A. MELLICK,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2023-1733

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-16-0121-B-1.

---

Decided:  April 17, 2024

---

TYLER A. MELLICK, Alameda, CA, pro se.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before LOURIE, REYNA, and HUGHES, *Circuit Judges*.

PER CURIAM.

Tyler A. Mellick, a former employee of the U.S. Department of the Interior, appeals a decision from the Merit Systems Protection Board. The decision affirmed an administrative judge's ruling that dismissed Mr. Mellick's appeal of his termination for violating a Last Chance Agreement based on lack of jurisdiction. Because we hold that Mr. Mellick waived his appeal rights by executing the Last Chance Agreement and did not provide substantial evidence that the waiver of his appeal rights should not be enforced, we affirm the Merit Systems Protection Board's decision.

I

A

On October 17, 2014, the U.S. Department of the Interior removed Mr. Mellick, an employee of the agency at Grand Coulee Dam in Washington state, from federal service. P.A. 1–2.[1] After Mr. Mellick challenged his removal to the Merit Systems Protection Board (MSPB), the agency and Mr. Mellick entered into a settlement agreement that resolved the matter. The settlement agreement included a clause stating, "The parties agree to keep the terms and conditions of this Settlement Agreement confidential and will not release its contents." P.A. 3.

As part of the settlement agreement, Mr. Mellick signed a Last Chance Agreement (LCA) on March 4, 2015, which allowed his return to work. The LCA stated that "Mr. Mellick underst[ood] that he must comply with all applicable rules, management directives/instructions,

---

[1]    Citations to "P.A. ___" refer to the appendix filed with Mr. Mellick's corrected brief. *See Mellick v. Dep't of the Interior*, No. 23-1733 (Fed. Cir. June 28, 2023), ECF No. 10.

regulations, policies, and laws, required of him by the Agency and the Federal Government." *Id.* at 5. The LCA further represented that "[h]e also underst[ood] that any misconduct of any type that would merit disciplinary action at the level of a suspension or higher w[ould] violate this Agreement." *Id.*

Additionally, the LCA provided that "Mr. Mellick underst[ood] and agree[d] that, if he commit[ted] one infraction or incident of misconduct as described in the immediately preceding paragraph, the Agency w[ould] find him in violation of the terms of this Agreement." *Id.* Mr. Mellick also agreed that "within one day of being advised by the Agency that it ha[d] found him in violation of this Agreement, he w[ould] submit his voluntary resignation from employment." *Id.* And if he "fail[ed] to provide a voluntary resignation, the Agency w[ould] separate him from Federal Service for violation of this Agreement." *Id.*

Finally, Mr. Mellick agreed that by signing the LCA, he "voluntarily waive[d] any and all procedural rights [he] may have [had] . . . concerning preexisting, current, and future claims or appeals arising from operation of this Agreement." *Id.* at 6. These procedural rights included "future rights to challenge any subsequent resignation or removal resulting from [his] violation of the [LCA]," though Mr. Mellick could still "challenge any breach of the [LCA]." *Id.*

In addition to imposing obligations upon Mr. Mellick, the LCA also imposed obligations upon the agency and upon Mr. Mellick's union, the Columbia Basin Trades Council (the union). In addition to Mr. Mellick, the signatories to the LCA included Coleman Smith, the power manager at Grand Coulee Dam, and David Cartwright, the union's local president.

Several months after executing the LCA, the agency charged Mr. Mellick with four acts of misconduct that violated the LCA, which were:

> (1) ranting at a coworker during a meeting using obscene language; (2) failing to follow a supervisory instruction to return to the meeting after he left; (3) placing the only working elevator on hold, endangering others who might need the elevator in an emergency; and (4) putting his arms around a coworker and licking his ear.

*Id.* at 9. Because the agency determined that Mr. Mellick violated the LCA, the agency removed him from his position effective October 22, 2015.

B

Mr. Mellick appealed the removal to the MSPB, arguing, among other things, that the agency violated the settlement agreement's confidentiality clause by informing his coworkers of the LCA's existence, which resulted in Mr. Mellick's coworkers provoking him into breaking the LCA. *Id.* at 8–9. In his initial decision, the administrative judge ruled that Mr. Mellick had breached the LCA based upon the evidence presented by the agency. The administrative judge also concluded that the agency had not breached the confidentiality term of the settlement agreement.

Mr. Mellick then petitioned the MSPB for review of the administrative judge's initial decision and the MSPB remanded the case back to the administrative judge. The MSPB affirmed the administrative judge's ruling that the appellant had breached the LCA. *Id.* at 10–12. But the MSPB concluded that further fact-finding was necessary to determine whether the agency had breached the confidentiality provision of the settlement agreement. *Id.* The MSPB noted that the LCA itself did not have an express confidentiality provision. But the LCA was incorporated by reference into the settlement agreement, which provided that "[t]he parties agree to keep the terms and conditions of the Settlement Agreement confidential and will not release its contents." *Id.* at 12–13. The MSPB thus concluded

that the terms of the LCA "were subject to the [settlement] agreement's confidentiality provision." *Id.* at 13. Further, the MSPB reasoned, "[t]he agency's promise of confidentiality regarding the terms and facts of an agreement goes to the essence of the settlement," and "[w]hen a party to a settlement agreement materially breaches the confidentiality term of the agreement, the nonbreaching party may elect either to enforce the terms of the agreement or to rescind the agreement and reinstate the appeal." *Id.*

Following remand, the administrative judge held a jurisdictional hearing on December 9, 2016. After the jurisdictional hearing was held, the administrative judge concluded in an initial decision dated January 13, 2017, that, because Mr. Mellick had waived his appeal rights by executing the LCA, and failed to show that the waiver of his appeal rights should not be enforced, the MSPB did not have jurisdiction to hear his appeal and dismissed the action. In his decision, the administrative judge rejected Mr. Mellick's arguments that the agency breached the confidentiality term of the settlement agreement by: (a) allowing Mr. Cartwright to sign the LCA, (b) informing Mr. Mellick's first- and second-line supervisors of the LCA, and (c) disclosing the LCA to Mr. Mellick's co-workers.

Mr. Mellick then petitioned the MSPB for review of the administrative judge's remand decision. In his petition, Mr. Mellick asserted that the union president was not an authorized signatory to the LCA and that the employees who were told about the LCA—the union president and the appellant's supervisors—were not responsible for implementing the LCA. S.A. 3.[2] The MSPB denied the petition for review and affirmed the administrative judge's

---

[2] Citations to "S.A. ___" refer to the supplemental appendix filed with the government's response brief. *See Mellick v. Dep't of the Interior*, No. 23-1733 (Fed. Cir. Aug. 4, 2023), ECF No. 11.

dismissal of the appeal. *Id.* at 2. The MSPB explained that Mr. Mellick had "the burden to show that the agency materially breached the LCA or otherwise acted in bad faith." *Id.* at 4. It further recognized that the MSPB "has consistently viewed the violation of nondisclosure provisions in settlement agreements seriously." *Id.* "Condoning such violations," the MSPB explained, "would have a chilling effect on attempts to settle appeals." *Id.* at 4–5.

The MSPB then considered the challenges raised by Mr. Mellick. First, the MSPB affirmed the administrative judge's finding that Mr. Mellick consented to the disclosure of the LCA to Mr. Cartwright, explaining that the LCA signed by Mr. Mellick included a signature block for Mr. Cartwright, which was on the same page as Mr. Mellick's signature block. Further, the LCA itself included terms specifying the rights of the union of which Mr. Cartwright was the local president. Though Mr. Mellick testified that the version he had signed was different from the final LCA that was in the record, the MSPB credited the administrative judge's determination that Mr. Mellick's testimony lacked credibility.

Second, the MSPB affirmed the finding that the settlement agreement's confidentiality provision was not breached by the disclosure of the LCA to Mr. Mellick's supervisors. The MSPB noted that the agency's power manager, Mr. Smith, had testified that he had explained to managers in Mr. Mellick's supervisory chain that Mr. Mellick would be returning to work pursuant to an LCA and should be treated fairly. The MSPB concluded that "it was reasonable for the signatory manager to provide a brief explanation to [Mr. Mellick's] managers regarding why this was occurring and urge them to treat [Mr. Mellick] fairly without revealing the specific terms of the LCA." *Id.* at 6. Further, the MSPB affirmed the administrative judge's finding that "the subordinate managers would have a role in implementing the LCA as they would be observing [Mr. Mellick's] conduct upon his return to duty." *Id.*

The MSPB also affirmed the administrative judge's finding that Mr. Mellick had failed to show any disclosure of the LCA to Mr. Mellick's co-workers. The MSPB noted that the finding was based on the administrative judge's assessment of witness credibility and identified "no reason not to afford that determination the appropriate deference." *Id.* at 7.

Finally, the MSPB rejected various discovery-related challenges raised by Mr. Mellick. It rejected his contention that the agency should have been sanctioned for cutting short a deposition of Mr. Smith on the grounds that Mr. Mellick's questioning was not relevant to the narrow issue before the MSPB on remand. After the administrative judge granted the motion to compel the deposition, the deposition proceeded, and Mr. Mellick sought sanctions. The MSPB explained that, considering that the agency appeared to have complied with the motion to compel, the administrative judge did not abuse his discretion by denying Mr. Mellick's motion for sanctions. The MSPB also rejected Mr. Mellick's challenges to limits imposed by the administrative judge upon Mr. Mellick's questioning of agency employees' motivations and his vague assertion that deposition transcript testimony had been improperly excluded from the record.

The MSPB concluded that Mr. Mellick failed to show that his waiver of appeal rights in the settlement agreement should not be enforced and concluded that the administrative judge properly dismissed his appeal for lack of jurisdiction.

This appeal followed. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

II

Pursuant to 5 U.S.C. § 7703(c), we may set aside the MSPB's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020) (quoting § 7703(c)). We review legal decisions, such as contract interpretation, de novo, and findings of fact for substantial evidence. *Salmon v. Soc. Sec. Admin.*, 663 F.3d 1378, 1381 (Fed. Cir. 2011); *Bolton v. MSPB*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simpson v. Off. of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III

## A

On appeal to this court, Mr. Mellick first contends that the MSPB erred when it rejected his argument that the agency breached the confidentiality term of the settlement agreement. Per Mr. Mellick, this breach occurred by allowing a union official, Mr. Cartwright, to sign the LCA. Pet. Inf. Br. 3–4. Second, he argues that his supervisors, who were informed of the LCA, had no "specific enforcement or execution responsibilities in the settlement agreement." *Id.* at 6–7. Mr. Mellick asks our court to vacate the MSPB's decision and reinstate him to work with full back pay. *Id.* at 9.

Both the administrative judge's and MSPB's factual findings challenged by Mr. Mellick are supported by substantial evidence. First, the MSPB affirmed the administrative judge's finding that Mr. Mellick consented to the disclosure to Mr. Cartwright. This factual finding is based on the LCA signed by Mr. Mellick, which included a signature block for Mr. Cartwright on the same page as Mr. Mellick's signature block. This indicates that Mr. Mellick knew that Mr. Cartwright would receive and sign the LCA. S.A. 5. Further, the LCA itself included terms specifying the

rights of the union of which Mr. Cartwright was the local president, which demonstrated that the union would need to be aware of—and agree to—the LCA's terms. *Id.* The administrative judge found that Mr. Mellick's uncorroborated testimony lacked credibility, and the MSPB credited the administrative judge's credibility determination. *Id.* We have stated that such witness credibility assessments are "within the discretion of the Board and . . . such evaluations are 'virtually unreviewable' on appeal." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010) (quoting *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998)).

Second, substantial evidence supports the administrative judge's finding that the employees who learned of the LCA had responsibilities with respect to the enforcement of the LCA. The MSPB noted the testimony of the agency's power manager, Mr. Smith, who signed the LCA, in which he said that he had explained to managers in Mr. Mellick's supervisory chain that Mr. Mellick would be returning to work pursuant to an LCA and should be treated fairly. S.A. 6. The MSPB affirmed the administrative judge's finding that, because "the subordinate managers would be observing [Mr. Mellick's] conduct upon his return to duty," they would have a role in implementing the LCA. *Id.*

This finding is supported by the testimony of Mr. Smith, who testified that his view was that those individuals in the management chain "had as much impact on the implementation of the last chance agreement as I did and actually I saw them as having a more than impact [sic] on the last chance agreement since they were working closer to Mr. Mellick than I was." P.A. 65. His testimony supports the MSPB's conclusion that "it was reasonable for the signatory manager to provide a brief explanation to the [Mr. Mellick's] managers regarding why this was occurring and urge them to treat [Mr. Mellick] fairly without revealing the specific terms of the LCA." S.A 6. We, therefore, conclude that there was substantial evidence to support

the MSPB's finding that Mr. Mellick's union president was authorized to know of the LCA and that any agency officials who learned of the LCA had a reason to know in order to enforce the LCA.

## B

Mr. Mellick also argues that the MSPB did not interpret the settlement agreement correctly. Pet. Inf. Br. 8. We disagree. First, the settlement agreement did not require the agency to restrict who, within the agency, could learn of the LCA. The parties to the settlement agreement, including the agency, agreed to abide by the terms of the settlement agreement, including the confidentiality provision. But a party cannot be expected to shield itself from knowledge of an agreement that it signed. *See Shirley v. Dep't of Interior*, 2013 M.S.P.B. 76, (2013). Thus, the most logical reading of the confidentiality provision is that it prohibits disclosure only to third parties—not that it prohibits disclosure to an agency's own supervisory employees. *See id.* While Mr. Mellick was free to attempt to negotiate a confidentiality provision that imposed restrictions on who within the agency could learn of the LCA, *see, e.g., Sena v. Dep't of Defense*, 66 M.S.P.R. 458, 464 (MSPB 1995), he did not. Having failed to negotiate a provision that placed limits on who, within the agency, could review the LCA, he cannot now insist that the agency was required to impose such restrictions.

Second, even assuming that the settlement agreement imposed prohibitions upon intra-agency disclosure, it did not prohibit the agency from disclosing the LCA to those agency employees who needed to know of the LCA to execute its terms. If the power manager, who has only limited authority over personnel matters, was the only agency employee permitted to know of the agreement, it would effectively be impossible for the agency to follow the procedural steps necessary for removing Mr. Mellick pursuant to the LCA. *See* P.A. 5 (provision of LCA describing process for

removing Mr. Mellick); *Pourbabai v. Dep't of Transp.*, 90 F. App'x 396, 397 (Fed. Cir. 2004) (unpublished) (affirming the decision of the MSPB in which "the administrative judge held that knowledge by such a person did not violate the confidentiality provisions of the agreement" where "the person who knew of the settlement agreement was the person who would deal directly with [the petitioner] up to his actual retirement").

Mr. Mellick concedes that disclosures necessary to effectuate the LCA are permissible in his opening brief, when he states that the settlement agreement permitted the disclosure of the LCA to human resources and legal employees responsible for investigating allegations of misconduct. Pet. Inf. Br. 7. Mr. Mellick's disagreement is with the MSPB's conclusion that managers in Mr. Mellick's chain of supervision needed to know of the agreement to execute it. *See id.* But, for the reasons discussed above, the MSPB's decision is supported by our precedent.

## IV

We have considered the rest of Mr. Mellick's arguments and find them unpersuasive. We therefore affirm the MSPB's decision.

**AFFIRMED**

Costs

No costs.